UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL MARIE PINEDA

_____

Write the full name of each plaintiff.

-against-

ESPN, Inc. &
The WALT DISNEY COMPANY &
HEARST COMMUNICATIONS Inc.

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

## 18 CV 1353

_____CV_____

(Include case number if one has been
assigned)

Do you want a jury trial?
☑ Yes   ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

RACHEL          M          PINEDA
_____
**First Name**              **Middle Initial**        **Last Name**

23 Fall Mountain Terrace
_____
**Street Address**

Litchfield Co., Terryville CT              06786
_____
**County, City**                    **State**              **Zip Code**

210-885-7606                    _____
_____
**Telephone Number**                **Email Address (if available)**

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:   ESPN, Inc.
_____
**Name**
                I ESPN PLAZA
_____
**Address where defendant may be served**
                HARTFORD Co., Bristol, CT  06010
_____
                **County, City**          **State**      **Zip Code**

Defendant 2:   The WALT DISNEY COMPANY
_____
**Name**
                500 S. Buena Vista St.
_____
**Address where defendant may be served**
Los Angeles Co., Burbank, CA  91521 -0001
_____
**County, City**              **State**        **Zip Code**

Defendant 3:

_____

**Name**

_____

**Address where defendant may be served**

_____

**County, City**                **State**                **Zip Code**

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

ESPN

**Name**

1 ESPN PLAZA

**Address**

Hartford Co., Bristol, CT                06010

**County, City**                **State**                **Zip Code**

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

   The defendant discriminated against me because of my (check only those that apply and explain):

   ☒  race:  White/Hispanic

   ☒  color:  Brown

   ☒  religion:  Folk Catholic

   ☒  sex:  female

   ☒  national origin:  Mexican/Spanish/Native American/Tejas

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: WHITE    I am also Hispanic.

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☒ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: Rape related PTSD, Post-Partum + anxiety, depression

☒ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

Page 4

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐  did not hire me
- ☒  terminated my employment
- ☐  did not promote me
- ☒  did not accommodate my disability
- ☒  provided me with terms and conditions of employment different from those of similar employees
- ☒  retaliated against me
- ☒  harassed me or created a hostile work environment
- ☐  other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

— See attached —

_____

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?   9/7/16

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?   10/31/17

When did you receive the Notice?   11/7/17

☐ No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☒ direct the defendant to re-employ me

☒ direct the defendant to promote me

☒ direct the defendant to reasonably accommodate my religion

☒ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

pay $100k in lost wages ½

~~thousand in damages~~

$2.5 million in damages, pain, suffering ½ medical care, ½ reimbursement of out-of-pocket payments of benefits lost.

$200K college scholarship to my child for his pain and suffering ½ to compensate his father for my loss of income.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

**Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.**

1-7-18

**Dated**

*Rachel M Pineda*

**Plaintiff's Signature**

RACHEL

**First Name**

M

**Middle Initial**

PINEDA

**Last Name**

23 Fall Mountain Terrace

**Street Address**

Litchfield Co., Terryville, CT

**County, City**                                          **State**

06786

**Zip Code**

210-885-7606

**Telephone Number**

**Email Address (if available)**

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☒ No

> **If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.**

My name is Rachel Marie Pineda. I reside at 23 Fall Mountain Terrace in Terryville, Connecticut 06786. I was previously employed as an Associate Producer at ESPN, Inc., 1 ESPN Plaza, in Bristol, Connecticut 06010. The Walt Disney Company and Hearst Communications, Inc. own ESPN. I was fired on Monday, April 11, 2016, over the phone, after being interrogated as to when I was coming in, when I explained that the phone meeting had been planned for over a month and I had already made child care and transportation arrangements for the day. I had not been told by anyone in the three work days prior, when I was continuously brushed off by my management, that I would need to be on campus for the meeting. I was a Performance Improvement Plan that had been extended in February 2016 from when I had first started in Nov. 2015, to provide me with more substantial assignments than what I had been given and to accommodate use-it-or-lose-it vacation time. I believe that I was being lied to about what I was being asked to do at ESPN and I believe I was retaliated against and wrongly terminated based upon the color of my skin, my racial identity, my ethnicity, my national origin, my martial status, my religion, my disability, my gender, my age and use of FMLA. I also believe that ESPN is involved with espionage, human, arms and drug trafficking funded by foreign interests and the United States government.

My skin color is Brown. My race is white. I am Hispanic of Mexican-American ethnicity. I am of Spanish, Italian, Irish, Native American and native Tejas ancestry.

I am single. I am also a mother. When I asked to transfer departments due to a lack of concern for my safety on the road and in the Features department because I am the primary caregiver for my new child, I was told by Rob Gallo in Human Resources that men become dads, too. He asked me what I thought about the mother's room and when I told him they needed to change the carpet in the one I used, he also shared his thoughts about breastfeeding mothers: that we need to be watched and that we should only be allowed to sign up for prescheduled 20 minute intervals in a private, locked, one person booth. Otherwise we take up too much time and it can't be known what we are actually doing. He also disapproved of my child being brought to the mother's room to be fed; that it should only be used for pumping, not feeding. He also suggested I resign. Denny Wolfe had already said to me in November that I was not going to pass my PIP. When I returned to Rob's office after our meeting, with a resignation note in hand, he refused to look up at me, so I left.

I had previously voiced my concerns about the impacts of the hours and levels at which we were expected to work on my and other co-workers' health and the messages being sent to our viewers. Being on the road, I was subjected to co-workers who would text-and-drive, there were two identified people who followed me on a remote in Kentucky, one of them who was in my hotel room going through the nightstand drawers when I walked in, and because of increasing PTSD symptoms that occurred after being under anesthesia for surgery and also after learning about Disney's relationship with not just my rapist, but others who they have financed in the industry, and by how I was treated by my managers, Victor Vitarelli and Valerie Gordon when I told them I had been raped in college. I was put on medical leave, told I had to go see a doctor because I sent Victor an email at 3 a.m. (other employees would be praised for working 48 hour days), and was treated as a flight and mental health risk, with my badge deactivated for access onto campus (to drop off the carseat with my child's father), and not allowed to go on a remote with a senior producer to help train me on Feature storytelling, which was something I did not feel I got in an equal way to others in the department. There was also a lot of reorganization within ESPN and while other people were reassigned, I was put on a PIP and while I was approached at least twice to be a part of new groups, one a Preditor group by Neil Bondoni and other being Latino content in conjunction with partnerships being led by Hugo Balta, who asked me if I had any conflicts of interests, to which I answered no. I never heard back about it, but after I was fired, an article was published on ESPN dot com by a freelance male Latino writer who had a business relationship with Hugo, and his own separate media company. I believe that ESPN was developing these partnerships in order to gain access

to distribution and mailing lists and data in order to interfere with the 2016 Presidential election, to make use of $500,000 in EB-5 visa investments at the expense of long-standing careers for U.S. Citizens and their own stories. I believe they also may have been involved with spying and hacking of both on U.S. citizens and international populations and the digital infrastructure using their R&D department, computer servers, satellite transponders and technology. I was hired in Features in August 2013 to provide technical support for producers as the company moved over to a tapeless workflow. During my time working technology support, I was constantly asked by Producers and also by management to not follow procedure, particularly with using hard drives not purchased and processed in-house or to loan camera and editing equipment I managed to people in other groups. When I was hired for the position, I was told to not expect to produce anything for at least three years and that I would be trained on how to tell Feature stories as my background was in live events and technology. ESPN would later go on to say I was not the producer I presented myself to be. I never lied or misrepresented about my qualifications and even had to ask a question about a basic edit move during the interview. In the ENG studio, I was also often exposed to equipment that was not weighted down properly and was dangerous. Also, when I sent in an equipment purchase request, compiled after conversations with Producers in the group, I never got a response from management. I was also electroshocked when trying to use a breast pump in a bathroom close to my assigned edit room, and when I tried to tell the supervisor assigned, he said I lacked a sense of urgency towards the project, when the reason I was in the bathroom in the first place was because the mother's room to which I was assigned was longer walk across campus.

I am Catholic, both culturally and as a religion. I was physically shunned on campus by individuals involved with Freemasonry and/or Scientology. As ESPN strives to be inclusive and increase diversity, it continues to frame the experience of Latinos in America as an immigrant story, rather than including voices from 3rd, 4th or more generation American Hispanics. I believe that they actively work to enforce hatred of immigrants and continuously illustrate the narrative of non-white Americans as being "others." Hispanic employees are not given the same opportunities to advance at the rate white employees are.

I have PTSD and also have from cumulative post-concussive injuries, from injuries sustained on the job and also in domestic violence situations by individuals employed in the media industry. I was raped in college by an independent filmmaker, James Ford Robinson, whose film was financed by George W. Bush's zap dot com interests which were created from his Zapata oil industries companies, which was known to be a CIA purchasing front. The filmmaker and I went to the same university. He graduated about 20 years before I did and recruited me to work for him in a theatre class he spoke to that I attended. I was also raped three different times by three different men employed by ESPN, one time, on campus when I coerced into an machine bay where I could not escape, another time by co-workers who I believe used me in a Freemason ritual ceremony in the Boston-area, who when I reported it to Boston police, told me I had a work issue and to go to Human Resources, who then took my testimony to use against my in mediation. I was threatened on campus by this group of co-workers in September of 2004 when I was told in the cafeteria by Joseph Benjamin that I upset a lot of really powerful people to whom they had connections and that they would "see to it that my career would be destroyed." They were growing marijuana in at least one of their homes, which I believe came from a work remote or through an employee's familial connections to an American federal government contractor. The third time I was raped by an ESPN employee was at a co-worker's apartment who later told me, around Jan. or Feb. of 2016, on campus, that I was the "worst mother ever" when I said that I didn't have any photos of my child my phone when he asked to see one. ESPN Human Resources did not find this to be inappropriate on his part. I was also not offered bereavement leave or the ability to transfer back to the International department from where I had applied to Features after telling Denny that I had an aborted pregnancy due to a genetic disorder with the fetus in July 2013. I later developed post-partum depression after this and another pregnancy. I also had to take FMLA to care for myself in June

2015 after having surgery. Denny refused to grant an extension deadline on my goals although I asked for one due to medical leave and also other co-workers traveling on remote. Denny Wolfe laughed at me when requested noise cancelling headphones to replace the ones provided to me by the company in International to help with the ringing in my ears and with concentration and to dampen the noise from the foosball table and lounge that had been installed on the Features floor. It took a month to get the headphones. I was also hit in the jaw on a remote by the camera when we both reached for a falling camera in Lexington, Kentucky in Feb. 2016. I was violently ill the next day with symptoms of a concussion, but I was by myself and so I slept on the floor of the rental car until it was time to leave for my flight. I tried reporting the incident to my management, but due to the injury and with the way my management kept minimal contact with me and with how Denny was dismissive and curt with me, I kept forgetting and also couldn't get a word in. When I approached Denny after my vacation time, on a Wednesday afternoon, he told me to go home and sit in the sun for some Vitamin D to cure jet lag. The next day, he ignored me and on Friday, he told me we wouldn't be meeting because I had had no assignments that week. My teeth continue to chip due to the injury to my jaw and I can not read bedtime stories aloud to my son for very long. I was never given any training on what to do when an incident like that happens on set and Human Resources was more interested in learning private details about my PTSD than providing me with avenues for Workers Compensation or time off or accommodations. My department also hired CAA-repped Nathaniel Parker to write the Carry On story, who was later in the news for rape allegations while he was a student at Penn State. I had previously done a story pitch about athletes investing in *Birth of a Nation*. ESPN and Disney do not have concern for employees who may want to recuse themselves from such projects or groups for reasons that include that it could be damaging their health, go against their personal beliefs or whose disability could be affected by being gaslighted or not told the truth. I had also been domestically abused by Simon Gutierrez, a former employee in ESPN Classic, who played baseball with some of the producers in Features. He threw an alarm clock like a baseball at my head once, and I needed stitches; and it affected my sensitivity to light to where my eyes water easily and I can't control it. I had been told by a female boss in International after I moved to Features "to never let them see you cry."

During the time I was on the PPR, a former boss from International and ESPN Deportes, started to hit on me. After an off-campus networking meeting at a restaurant, where he persistently asked me questions about my personal life and to go with him to Cambodia. He brushed off any questions about work or possible opportunities, except for one in New York with a third party, but I would have to be completely divested from ESPN. He didn't say any more about it, continued to flirt and then tried to kiss me on the lips before I went to my car. It was inappropriate, and I notified my former boss in International. ESPN found no cause of sexual harassment or concern for my safety.

I identify as a cis-gender female. I am currently 39 years old and I was 37 when I was terminated. I believe that ESPN did this because my complaint involved others who were over 40 and so that I could not file for age discrimination because I was not yet 40. In the media industry, however, and at ESPN, 37 is considered to be old. I was also told by co-workers in Features that I had "Mom Brain" and that "I didn't know anything, I just typed it into Google" and asked where my parents were was from and what language my family spoke in the house growing up. My direct supervisor, Denny Wolfe, also told a joke that was posted online and played in a staff meeting where the punchlines were that the Producers at ESPN all look like him and that because of that, our names aren't important and he mocked racial categories that or used to describe ethnic minorities in the United States by assigning himself the category of *generisus Caucasius producerus* or a "generic white male producer." Another time I was asked if I worked in the cafeteria, when I drove up to the security booth to get on campus. When a former professional and college football player, Ricky Williams, denied a pre-arranged interview

with my three times, the last time looking me up-and-down before saying no, and I told Denny about it and asked if someone else could get the questions for me, Denny shrugged and told me "that's just the way he is." When I had first entered the group, a producer, Chris Bloxom, didn't like an answer I gave him, to call the IT Help Desk, and so he started calling me, from across the cubicle aisles, by the help desk extension number. Denny told me that he told Chris I was uncomfortable with it because "I didn't know them, yet."

I was not aware of the classification: Disney No-Rehire until after I tried to be hired for contact work on ESPN productions and was told I can never work for Disney again in any capacity. Disney is an international monopoly that includes a wide range of industries. I have effectively been blacklisted from the private, corporate world and with the possible merging of Disney and Fox properties, and unknown media moves in the future, my ability to earn a meaningful income and remain off social aid for the remainder of my adult life is severely restricted to the point of discrimination. However, other people who had previously been banned from Disney, are now working for them again.

The fraternal, secret society, cult-like culture at ESPN is hostile for women, people of color, new moms, women over 33 and rape survivors. There is a collusion of silence between the media, political donors, politicians and the government that violates the civil rights of Americans. I believe that ESPN's, Disney's and Hearst's business practices have hurt and continue to cause harm and inequity for women and people of color who are United States citizens.

Based on the foregoing, I hereby charge the Respondents with discriminating and retaliating against me on the basis of my race, ethnicity, nation origin, religion, sex, martial status, disability & FLMA use in violation of federal law.

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
**AFFIDAVIT OF ILLEGAL DISCRIMINATORY PRACTICE**

DATE: ___September 7, 2016_____    CASE NO: _1730131_____

My name is _Rachel Pineda_____

And I reside at _23 Fall Mountain Terrace, Terryville, Ct 06786_____

My email address is _rpda@me.com_____

The respondent is _ESPN_____

Whose business address is _One ESPN Plaza, Bristol, Ct 06010_____

The alleged discrimination took place in _Bristol, Connecticut._

I was
(x) terminated
( ) suspended
(x) placed on probation
( ) demoted
( ) warned
(x) given a poor evaluation
(x) denied a raise
(x) less trained
( ) denied service (s)

(x) not hired/not promoted
( ) not rented a dwelling
(x) harassed ( ) sexually harassed
( ) earning a different rate of pay
( ) constructively discharged
(x) retaliated against
(x) denied a reasonable accommodation
( ) delegated difficult assignments
(x) discriminated against in the
terms/conditions of employment

(x) other _placed on PIP_
_no opportunity for lateral or upward ~~for~~ transfer mobility._

On April 11, 2016, I believe that my

( ) race
( ) color
( ) sex { } male { } female
( ) previous opposition, filing,
Testimony or assistance
(x) ancestry  (Hispanic) Mexican-American
( ) age
( ) religion
( ) pregnancy
( ) alienage
( ) gender identity or expression
( ) other perceived disability and
perceived need for accommodation

( ) national origin
( ) marital status
( ) physical disability
( ) intellectual disability
( ) mental disability
( ) religious creed    ( ) creed
( ) familial status
( ) sexual orientation
( ) learning disability
( ) lawful source of income
( ) genetic information

RECEIVED
STATE OF CONNECTICUT

SEP - 7 2016

Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

Issued 4/94
Revised 9/20/2011

Was/were in part factor/factors in this action/these actions.  I believe that the respondent violated the following statutes and acts listed below, as amended, enforced through CONN. GEN. STAT. § 46a-58(a) if applicable:

(x) CONN. GEN. STAT. § 46a-60(a)(1)
(x ) CONN. GEN. STAT. § 46a-60(a)(4)
( ) CONN. GEN. STAT. § 46a-60(a)(5)
( ) CONN. GEN. STAT. § 46a-60(a)(7)( )( )( )
( ) CONN. GEN. STAT. § 46a-60(a)(8)( )( )( )
( ) CONN. GEN. STAT. § 46a-64( )( )
( ) CONN. GEN. STAT. § 46a-64a( )( )( )
( ) CONN. GEN. STAT. § 46a-70
( ) CONN. GEN. STAT. § 46a-71
( ) CONN. GEN. STAT. § 46a-80 ( )
( ) CONN. GEN. STAT. § 46a-81( )( )( )
( ) other_____

(x) Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-2
{cite for 15 individuals employed}
( ) Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634
{cite for over 20 individuals employed}
( x) Americans With Disabilities Act, 42 U.S.C. § 12101 et seq.
( ) Equal Pay Act of 1964, U.S.C. § 206
( ) Section 504 of the Rehabilitation Act of 1973

I provide the following particulars:  (PLEASE TYPE OR PRINT THE  INFORMATION)

SEE ATTACHED.

Issued 4/94
Revised 9/20/2011

## Affidavit of Rachel Pineda

1.     My name is Rachel Pineda.  I am a woman of Hispanic ethnicity.  I reside at 23 Fall Mountain Terrace, Terryville CT 06786.  I suffer from post-traumatic stress disorder ("PTSD") due to being raped in 1998.

2.     The Respondent is ESPN, Inc., a corporation with its corporate headquarters located at One ESPN Plaza, Bristol CT 06010.  The Respondent is a foreign corporation registered with the State of Connecticut and subject to the laws of the State of Connecticut.

3.     The Respondent employs over 200 individuals, and is an employer as defined under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq.

4.     I was originally employed by Respondent from March 2003 to 2008.  I was subsequently rehired by Respondent in January 2011 and was employed by Respondent until the termination of my employment on April 11, 2016.  My most recent job title was Associate Producer I.

5.     During my employment with Respondent, I worked in several different departments.  My performance reviews, prior to October 2015, were always satisfactory or better, and I was promoted several times.

6.     In August 2013, I was moved into the Domestic Features Department as an Associate Producer I in a technical role.  I was informed that I was going to be primarily with Avid/tech support, with the potential for an opportunity to produce in the future.  In this position, I trained producers in the technical aspects of producing, such as editing platforms and non-tape assets, and managed equipment and inventory.  It was understood that I would remain in that position for three years, during which time my technical training would be augmented by further training in the other aspects of producing, including feature producing from the original concept through scripting, taping, editing and final execution.

7.     In October 2014, I went out on maternity leave, returning in February 2015.

8.     After my return from maternity leave, my job responsibilities changed significantly.   Due to the change in content demands by SportsCenter, I was transitioned to the position of Associate Producer I and assigned feature-content work, without any further training and cutting short the originally-specified duration of my technical support position. In addition to continuing my technical support responsibilities, and training other individuals in this position, I was assigned responsibilities for creating, developing, implementing and completing feature assignments, even though I had not received the promised training for this.  Although I was assigned to shadow an experienced associate producer, most of the field work was done before I arrived. When I did arrive, I was sent off to run errands; when I returned from the errands, I was

sent home, instead of observing on the editing session.  I was not provided any further training.

9.     In June of 2015, I was out of work for a month due to surgery related to post-pregnancy complications.

10.     Several times I requested minor accommodations to assist me in my work; for instance, I requested a new set of noise-cancelling headphones after my old set broke.  Instead of simply providing me with a new set, I was challenged as to why I needed them, and then handed a card about the Employee Assistance Plan ("EAP"), and talk to someone, or contact my primary care physician.  I also requested a larger desk, as had several of my co-workers; instead, Respondent installed a foosball table.  I requested several times that I not be referred to the EAP because it was a trigger for my PTSD; despite my requests, any time I complained about working conditions or asked for an accommodation, I was handed the EAP card.

11.     In September of 2015, I was required to take an additional week off for "child bonding" due to new benefits rolled out by Respondent.  Due to a looming deadline, I asked if I could skip the week off; my boss refused.  I then requested an extension of time on a deadline, due to the time I had lost related to my surgery, and the time I would be losing due to my being required to take this additional week off.  My boss again refused.

12.     In October 2015, I received my performance evaluation and was rated "Falling behind."  One of the main reasons for this rating was because I missed the deadline for the assignment that I had previously requested an extension for.  This was the first time I received a performance evaluation lower than a satisfactory ("Right On Track") rating.

13.     After receiving this evaluation, I attempted to respond.  During a meeting with Valerie Gordon and Victor Vitarelli, the Department Managers, I disclosed that I suffered from PTSD as a result of a rape years before, and subsequent sexual abuse.  I was then forced out on administrative leave, although Respondent characterized it as a medical leave.  I was not permitted to return to work until my doctor sent them a note stating that I was able to return to work.

14.     After my return from this forced leave, on November 18, 2015, I was immediately placed on a Performance Improvement Plan that was set up for 90 days, through February 15, 2016.   Several areas of my work were identified for improvement; however, during the period of the PIP, I seldom received any assignments that would allow me to show any improvement in these areas.

15.     One of the areas that I was told I was lacking in was story creation. However, when I did pitch a number of stories, I was frequently told that they were too "local." This comment was usually made about any stories I pitched that involved the Hispanic community.  I also pitched a story about an African American ballet dancer, and was told it wouldn't be of interest to Respondent's target audience.  However, when the

same story was pitched again by another person, a Canadian producer of African ethnicity was assigned to do the story for Black History month.  In addition, Ms. Gordon told me to "go to Deportes" with my ideas.  (Deportes is the Spanish-language network run by ESPN.)  Other comments on my ethnicity were made by other employees of Respondent.

16.     Several weeks after I was placed on the PIP, my manager Denny Wolfe told me I would not pass the PIP. Midway through the PIP, a Human Resources representative, Paul Homer, told me I should probably just resign.  Because of this, I felt I was being set up to fail.

17.     The PIP was extended twice by Human Resources when they took note of the fact that I was not receiving any substantial assignments that would allow me to show any improvement in the identified areas.

18.     While I was on the PIP, I requested and received permission to apply for other positions with Respondent where I felt my abilities and training would be better utilized. After applying for a number of positions, I was then told to stop applying because I was applying to too many in my efforts to move out of the department.

19.     On April 11, 2016, my employment was terminated; the reason given to me for this termination was that I had not successfully completed the PIP.

20.     Although I was not told at the time of my termination, the Disney Corporation, which owns ESPN, has labeled me as a "no-hire" throughout the company.  I was approached about doing some contract work for other individuals at ESPN, and then was informed that they could not hire me due to the blackballing by the Disney Corporation.

20.     Based on the foregoing, I hereby charge the Respondent with discriminating and retaliating against me on the basis of my ethnicity and disability in violation of state and federal law.

FORM 103(1)

I request the Connecticut Commission on Human Rights and Opportunities investigate my complaint, secure for me my rights as guaranteed to me under the above cited laws and secure for me any remedy to which I may be entitled.

Rachel Pineda being duly sworn, on oath, states that s/he is the Complainant herein; that s/he has read the foregoing complaint and knows the content thereof; that the same is true of her/his own knowledge, except as to the matter herein stated on information and belief and that as to these matters s/he believes the same to be true.

Dated in Waterbury, Ct on this 7th day of September, 2016.

Rachel Pineda

Subscribed and sworn to before me on September 7, 2016.

(Notary Public/Commissioner of the Superior Court)

My commission expires:

| CHARGE OF DISCRIMINATION<br>THIS FORM IS AFFECTED BY THE PRIVACY ACT OF 1974; SEE PRIVACY ACT STATEMENT BEFORE COMPLETING THIS FORM. | AGENCY<br>☐ FEPA<br>XX EEOC | CHARGE NUMBER |
|---|---|---|

CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES and EEOC
State or local Agency, if any

RACHEL PINEDA

| STREET ADDRESS    CITY, STATE AND ZIP CODE<br>23 FALL MOUNTAIN TERRACE | Date of Birth |
|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW).

| NAME   TERRYVILLE, CT | NUMBER OF EMPLOYEES, MEMBERS  15 | Telephone (include area code) |
|---|---|---|

| STREET ADDRESS   CITY, STATE AND ZIP CODE | | COUNTY |
|---|---|---|

| NAME   ESPN | Telephone (include area code) |
|---|---|

| STREET ADDRESS   CITY, STATE AND ZIP CODE<br>1 ESPN PLAZA, BRISTOL, CT 06010 | COUNTY |
|---|---|

| CAUSE OF DISCRIMINATION BASED ON (CHECK APPROPRIATE AREA)<br>☐Race: ☐Color: ☐ Sex ☐Religion ☐National Origin ☐ Retaliation<br>☐ Age ☐Disability ☐Other (specify) | Date Discrimination Took Place Earliest    Latest<br>«actdate»<br>___ Continuing Action |
|---|---|

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

**FOR EEOC/CHRO USE ONLY**
The particulars of this charge of discrimination are set forth in my complaint number
_____Which I filed with the Connecticut Commission on Human Rights and Opportunities on

_____ And which are attached hereto and incorporated as if fully set forth herein.

| I want this charge filed with both the EEOC and the State or local agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures | Notary (When necessary for State and Local Requirements)<br><br>X _____<br>Signature of Notary |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>X Rachel _____<br>Signature of Complainant |
| X 8/29/16 ___ X Rachel _____<br>Date          Charging Party(signature) | Subscribed and sworn to before me this date<br>(Day, month, year)  8/29/16<br>WATERBURY |

EEOC Form 5 (Rev. 3/01)

RECEIVED
STATE OF CONNECTICUT
SEP 07 2016
Comm. On Human Rights & Opportunities
WEST CENTRAL REGION

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

### PRIVACY ACT STATEMENT

CHRO No. _____

*(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses given below).*

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, CHARGE OF DISCRIMINATION, March 1984
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626.
3. PRINCIPLE PURPOSE(S). The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.
4. ROUTINE USES. This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, determine, conciliate and litigate charges of unlawful employment practices. Information provided on this form will used by Commission employees to guide the Commission's investigatory activities. This form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.
5. Whether disclosure is mandatory or voluntary and effect on individual for not providing information. Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII must be sworn to or affirmed. Charges under the ADEA should ordinarily signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.
6. [ ] Under Section 706 of Title VII for the Civil Rights Act of 1964, as amended, this charge will be deferred to and will processed by the State or Local Agency indicated. Upon completion of the agency's processing, you will be notified of its final resolution in your case. If you wish EEOC to give a Substantial Weight Review tot he agency's findings you must request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's finding as EEOC's and close your case.

Notice of Non-retaliation Requirements

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed a practice made an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.

EEOC Form 5

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

NOTICE OF RIGHT TO REQUEST REVIEW

Case No. _____

Case Name:   v.


This notice is to inform you that the charge to which you are a party, filed with both the Connecticut Commission on Human Rights and Opportunities (CCHRO) and the federal Equal Employment Opportunity Commission (EEOC), will be processed by the CCHRO.

In accordance with the Commission's Procedural Regulations, the Commission will accept the CCRHO's final finding or resolution of the charge and adopt it as its own unless a party to the charge requests the EEOC to conduct a review of the CCHRO's final action.

To exercise this right you must submit your request for review, in writing, to the EEOC office at the following address <u>within fifteen (15) days</u> of the date on which you receive the CCHRO's notice of its final findings:

**U.S. Equal Employment Opportunity Commission,**
**Boston Area Office,**
**John F. Kennedy Federal Building**
**Government Center, Room 475**
**Boston, MA 02203-0208**


If you have any questions concerning this notice or your right to request review, please contact this office.

<u>**I ACKNOWLEDGE RECEIPT OF THIS NOTICE**</u>

*Rachel de Pineda*
Signature of the Complainant

*8/30/16*
Date


_____
Respondent's name

CCHRO Number: _____
EEOC Number: _____

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

NOTICE TO COMPLAINANT OF DUTY TO COOPERATE

I, _Rachel Pineda_, understand that it is my duty to respond timely to any information and/or assistance requested of me by the Commission and to cooperate with the Commission at all times. Further, I understand that it is my sole duty and responsibility to notify the Commission of my whereabouts at all times throughout the pendency of this complaint and, in the event my address and/or telephone number changes, it is my duty to notify the Commission immediately. In this respect, I represent that the individual named below whose address and telephone number is as stated, will always know my whereabouts and can always contact me.

This individual should be a friend or relative not living with you
DO NOT LIST YOURSELF

NAME _ANITA PINEDA_          ADDRESS _2302 Spicewood DR._
CITY _Weslaco_          STATE _TX_          ZIP CODE _78596_
TELEPHONE ( ) _956- 969- 0072_

Additionally, I promise to provide the Commission, within a period of time not to exceed two working days after my receipt of its copies of the following documents: [check applicable spaces]

☑ Yes ☐ No (a) copies of any and all decisions and or determination(s) made by the Connecticut Department of Labor, Division of Unemployment Compensation, respecting my eligibility to receive Unemployment Insurance Compensation; ·

☑ Yes ☐ No (b) copies of any writings that my employer gives to the Connecticut Department of Labor as to its consent and/or objection to my receiving benefits;

☑ Yes ☐ No (c) copies of any transcript (s) and/or tape recordings of testimony given by myself and my employer to the Connecticut Department of Labor;

☑ Yes ☐ No (d) copies of any union grievance filed by co-workings or myself challenging the company's behavior, the outcome of any grievance etc., and;

☑ Yes ☐ No (e) other information, please describe:

_____
_____
_____

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

If any time the Commission is unable to contact me, the Commission will be deemed to have provided me with actual notice by mailing two letters, first class mail, to my last known address. It will be presumed that, once the letters have been mailed out that I have received the correspondence unless the letters are returned to the Commission by the Post Office.

For the purposes of the EEOC notice requirements, when the Commission is unable to contact me, a letter will be sent certified mail, return receipt requested. Once this letter has been mailed I will be deemed to have received actual notice.

By: _Rachel _____

Dated: _8/29/16_____

[Complainant must sign the original of this form and be given a copy.]

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Case No.: _____          Date: _____
Case Name:

## REMEDY WORKSHEET

In the event of a successful resolution of your case, the Connecticut Commission on Human Rights & Opportunities (the "Commission") may be able to negotiate for you monetary and non-monetary damages. Please make check marks (/) where applicable:

☐   back pay minus interim earnings (unemployment compensation, earnings from other jobs, etc.)
☐   reinstatement

☐   merit increase
☐   promotion
☐   training
☐   restoration of fringe benefits, including 401K, stock options, etc.
☐   accommodation
☐   cease and desist harassment
☐   policy change(s)
☐   change in performance evaluation
☐   expunge warnings from personnel file
☐   emotional distress damages
☐   other _____

Information necessary to calculate your damages (If you need more space, please attach additional sheets.):

1. Date of discharge/failure to hire/failure to promote: _____
2. Pay rate hourly: _____      weekly _____  annually: _____
3. Hours worked weekly: _____
4. Did you work overtime regularly: ☐ Yes ☐ No
   If Yes, how often and how many hours per week? _____
5. Other actual out-of-pocket expenses (medical, etc.) _____
6. Do you want to back to work for the respondent? ☐ Yes ☐ No
7. Please list other earnings since discharge: _____

If you have been discharged from employment, it is your duty to look for other work even if you have filed a charge of discrimination. You may be required to provide the Commission a record and evidence of your attempts to find work. Please keep accurate records of all such attempts. The Commission may require you to provide copies of various employment documents, which may include: W-2 forms, pay stubs or other documents showing pay history, or tax returns.

_Rachel M._ _____          _8/29/16_ _____
Complainant's Signature                         Date

INFORMATION REGARDING COMPLAINTS PREVIOUSLY FILED WITH THE
CONNECTICUT COMMISSION ON HUMAN RIGHTS

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Case No.: _____

AUTHORIZATION TO RELEASE INFORMATION FROM THE RECORDS OF:

_____

(Name of Undersigned)

I authorize disclosure by:

_____
_____
_____

To the representative of the CONNECTICUT COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES of the information and record specified below that concern my complaint filed with the COMMISSION.

☐   Medical Records
☐   Personnel Records
☐   Credit Rating
☐   Other: _____

_Rachel M Pineda_
(Signature of Complainant)

_23 Fall Mountain Terrace_
_Fernyville, CT 06786_
(Address)

_8/29/16_
(Date)

_8/22/78_
(Birthdate)

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

COMPLAINANT'S WITNESS LIST

CHRO No. _____

Date Filed: _____

Complainant: 

Respondent: 

If this complaint is retained following a Case Assessment Review (CAR), I am identifying the following persons as relevant witnesses:

<u>Witness name, telephone # and address</u>                    <u>Specific relevant information</u>

☒ I have no witnesses at this time.

_Rachel N Dix_
Complainant's Signature

_8/29/16_
Date

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

CHRO No. _____

Please provide the following information:

☐      I have filed a previous complaint:

        Date of filings:     _____
        Regional Office:   _____
        Case Number:    _____
        Class Basis:     _____

☐      I have not filed a previous complaint.

I understand that my failure to disclose this information may lead to a delay in the processing of my complaint or a dismissal of my complaint for failure to cooperate.

_Rachel McBreda_
Complainant Signature

_8/29/16_
Date

STATE OF CONNECTICUT
COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

## INTAKE ACKNOWLEDGEMENT FORM

This is to state, that you have been informed by the CHRO Representative assisting you in filing your complainant, that only you can make the decision to file, or not to file the complainant.  As such, no matter what the CHRO employee thinks about the merits of our complainant, you still have a right to file if you want to.

I have read and understand my rights as stated above.

_Rachel McPriela_
Complainant's signature

_8/29/16_
Date

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Rachel Pineda**
    **23 Fall Mountain Terrace**
    **Terryville, CT 06786**

From:  **New York District Office**
    **33 Whitehall Street**
    **5th Floor**
    **New York, NY 10004**

| | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16A-2016-01896** | **Holly M. Woodyard,** **State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
**District Director**

October 31, 2017
*(Date Mailed)*

Enclosures(s)

cc:
    **Attn: Director of Human Resources**
    **ESPN**
    **Espn Plaza**
    **Bristol, CT 06010**

**U.S. Department of Justice**
United States Attorneys Office
*Southern District of New York*

*86 Chambers Street*
*New York, NY 10007-1825*

Official Business

RECEIVED
SDNY DOCKET UNIT
2018 FEB 14  AM 10: 23

David
Kennedy

U.S. ATTORNEY
SECURITY

Civil Clerks Division
5th Floor
86 Chambers St.
NY. NY