# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|   |   |   |
|---|---|---|
| RACHEL MARIE PINEDA, | : | |
|     Plaintiff, | : | CASE NO. 3:18-cv-325 (MPS) |
| | : | |
| v. | : | |
| | : | |
| ESPN, INC. et al., | : | |
|     Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff Rachel Marie Pineda ("Pineda"), a resident of Terryville, Connecticut, brings this *pro se* action alleging that her employer, defendant ESPN, Inc. ("ESPN"), discriminated against her on the basis of multiple protected characteristics and retaliated against her for exercising her rights under the FMLA. Pineda sues ESPN and ESPN's purported owners, The Walt Disney Company ("Disney") and Hearst Communications, Inc. ("Hearst"). Pineda asserts causes of actions under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; (2) 42 U.S.C. § 1981; (3) the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796; (4) the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 to 12213; and (5) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 to 2654.

Under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court must evaluate plaintiff's complaint and dismiss the case if it "fails to state a claim on which relief may be granted." The Court will not accept as true conclusory allegations and may allow the case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, it is well established that "[*p*]*ro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation and internal quotation marks omitted). At this stage, "a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted).

### I. Title VII Claims

In Pineda's first cause of action under Title VII, 42 U.S.C. §§ 2000e to 2000e-17, Pineda claims that she was discriminated against on the basis of multiple protected classes, specifically: her race (white Hispanic); color (brown); religion (Catholic); sex (female); and national origin (Mexican/Spanish/Native American/Tejas). (ECF No. 2 at 3.) Under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against [her] and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

For the first element, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id.* at 85 (citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.*

For the second element, "a plaintiff must allege that the employer took adverse action

against her at least in part for a discriminatory reason." *Id.* at 87. "[S]he may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* "[I]n making the plausibility determination, the court is to draw on its judicial experience and common sense." *Id.* (quotation marks omitted). The Second Circuit "generally looks to four factors to determine whether a remark made in the workplace is probative of discriminatory motive: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Shaw v. McDonald*, 715 F. App'x 60, 61 (2d Cir. 2018) (citation omitted).

When her complaint is construed liberally, Pineda alleges a claim for Title VII employment discrimination on the basis of her race, color, and national origin. Pineda alleges an adverse employment action, specifically that she was terminated from ESPN on April 11, 2016 for purportedly not successfully completing an ESPN "performance improvement program" (the "PIP"). (ECF No. 2 at 8; *see id.* at 16, ¶ 19.)[1] Pineda's charge relies on "actions or remarks

---

[1] Pineda's charge appears to have been filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on September 7, 2016. (*See* ECF No. 2 at 12.) Accordingly, the only other action by ESPN she alleges that does not appear to be time-barred is her placement on the PIP in November 2015. (ECF No. 2 at 15, ¶ 12) *See Richardson v. Hartford Pub. Library*, 404 F. App'x 516, 518 (2d Cir. 2010) (holding that 300-day statute of limitation applies to charges initially filed with CHRO).) However, Pineda does not allege sufficient facts about the PIP to show that her placement constituted a "materially adverse change in the terms and conditions of [her] employment," or otherwise allege facts in connection with her placement giving rise to a plausible inference of discrimination on the basis of a protected class under Title VII.

3

made by decisionmakers that could be viewed as reflecting a discriminatory animus." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). At least one such remark appears to state a claim under Title VII. The affidavit attached to Pineda's complaint states that her manager, Valerie Gordon, told Pineda to "go to Deportes" (ESPN's Spanish-language speaking network) with her story ideas involving the Hispanic community, which Pineda had pitched as part of her tenure on the PIP. (ECF No. 2 at 15–16, ¶ 15.) This statement meets all four factors described in *Shaw*, as it was made by Pineda's direct supervisor, was made during the probationary PIP period before her termination, could be read to suggest hostility to Hispanic employees by suggesting they work for Spanish-speaking networks, and was directly connected to Pineda's performance during her probationary period. Accordingly, because this statement gives rise to an inference of discriminatory intent, Pineda's claim of discrimination due to her race, color and national origin may proceed at this time. *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 607 (2d Cir. 2016) (holding that discrimination based on Hispanic ethnicity constituted race discrimination under Title VII, but "may also be cognizable under the rubric of national-origin discrimination, depending on the particular facts of each case").

Pineda does not state a Title VII claim for employment discrimination on the basis of sex. Pineda alleges several comments made about her status as a new mother. *See* 42 U.S.C. § 2000e (defining the terms "because of sex" or "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes."). However, the complaint does not allege when those statements were made, and some of these allegations do not even identify the speaker. (ECF No. 2 at 9 (allegation that a

4

supervisor told Pineda she "lacked a sense of urgency" towards one of her projects when Pineda complained about being electroshocked after being forced to use a breast pump in a nearby bathroom); ECF No. 2 at 10 (unidentified colleagues told Pineda she had "Mom Brain"); ECF 2 at 8 (an identified individual in Human Resources had told Pineda at unspecified time that "breastfeeding mothers . . . need to be watched" or else it "can't be known what [they] are actually doing.").) More importantly, Pineda does not plausibly allege that these statements were in any way connected to her termination in April 2016. Accordingly, even construing Pineda's *pro se* complaint liberally, Pineda's claim for employment discrimination on the basis of sex fails. However, Pineda may within 30 days file an amended complaint that attempts to replead this claim to rectify the above defects.

Pineda also does not state a claim for Title VII employment discrimination on the basis of her religion, as her only allegation concerning her Catholic beliefs is that she was "physically shunned on campus by individuals involved with Freemasonry and/or Scientology." (ECF No. 2 at 9.) This allegation is conclusory and thus inadequate to give rise to a plausible inference of discrimination.

## II.  Section 1981 Claim

Pineda's second cause of action alleges a violation of 42 U.S.C. § 1981 for intentional employment discrimination on the basis of race. "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 . . . ." *Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 224 (2d Cir. 2004). However, unlike Title VII, "a plaintiff pursuing a claimed violation of § 1981 . . . must show that the discrimination was intentional." *Id.* at 226. I find

5

the same comment supporting an inference of discriminatory intent with respect to Pineda's Title VII claims supports an inference of intentional discrimination under 42 U.S.C. § 1981. *See Raymond v. City of New York*, 317 F. Supp. 3d 746, 764 (S.D.N.Y. 2018) (applying same four-part test to determine whether a comment evidences an intent to discriminate under § 1981); *see Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Local 15, 15a, 15c & 15d, AFL-CIO v. Tightseal Constr. Inc.*, No. 17 CIV. 3670 (KPF), 2018 WL 3910827, at *7 (S.D.N.Y. Aug. 14, 2018) (noting that statements of bias by decision-maker responsible for adverse action sufficiently alleges a causal connection between race and the adverse action). Accordingly, Pineda's Section 1981 claim may proceed.

### III. Rehabilitation Act/ADA Claims

I analyze Pineda's third and fourth claims under the Rehabilitation Act and ADA in tandem because they impose largely identical requirements. *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

Pineda attempts to state claims for both employment discrimination and failure to accommodate. To establish a *prima* facie case of employment discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). In addition, "[a] plaintiff states a *prima facie* failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered

6

by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 125–26 (emphasis added).

Pineda does not state a claim for employment discrimination or accommodation under the ADA or Rehabilitation Act, as she does not adequately allege that she suffers from a qualifying disability. The ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(A)(1); 29 U.S.C. § 705(20)(B) (adopting ADA definition of disability in Rehabilitation Act). At the motion to dismiss stage, plaintiff must allege that she suffers "from a physical or mental impairment, which 'substantially limit[s]' an activity that 'constitutes a major life activity under the ADA.'" *Telemaque v. Marriott Int'l, Inc.*, No. 14 CIV. 6336 (ER), 2016 WL 406384, at *6 (S.D.N.Y. Feb. 2, 2016). Pineda alleges that she has "rape-related PTSD," which is a mental impairment. However, Pineda does not allege anywhere in her complaint or CHRO charge that her PTSD "substantially limits" her in any major life activity, such as "working." *See* 42 U.S.C. § 12102(2)(A) (defining major life activities to include "working"). Although Pineda obliquely references "PTSD symptoms" and that certain actions by ESPN "trigger[ed]" her PTSD, she does not specify what symptoms she experienced and how those symptoms impacted her ability to perform her job as an Associate Producer. (ECF No. 2 at 8, 15 ¶ 10) *See Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, No. 14 CIV. 1729 (ER), 2016 WL 5799407, at *7 (S.D.N.Y. Sept. 30, 2016) (dismissing *pro se* complaint that contained "no allegations as to how Plaintiff's PTSD 'substantially limits' one or more of her 'major life

7

activities.'"). Moreover, "[Pineda] does not provide any factual support detailing the frequency, duration, or severity of any limitations on a life activity caused by her PTSD." *Cain v. Mandl Coll. of Allied Health*, No. 14 CIV. 1729 (ER), 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017), *appeal dismissed sub nom. Cain v. Weiner*, No. 17-2153, 2017 WL 6880083 (2d Cir. Nov. 8, 2017).

Because Pineda has not alleged a qualifying disability, she also has not alleged that she has a "record of" a qualifying disability. 42 U.S.C. § 12102(A)(1); *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 395 (E.D.N.Y. 2016) (holding plaintiff's "failure to plausibly allege a substantial limitation to a major life activity . . . precludes her from asserting that she has a record of disability"). Nor does Pineda adequately allege that ESPN perceived her as having a disability, as Pineda herself alleges that ESPN required her to take only a short-term medical leave when she disclosed her PTSD, after which she returned to work. (ECF No. 2 at 8, 15, ¶¶ 13–14.) *See Kelly*, 200 F. Supp. 3d at 395 (holding that plaintiff had not adequately pleaded that she was regarded as having a disability where, based on the pleadings, defendant appears to have perceived that plaintiff had only a transitory impairment).

Accordingly, because Pineda fails to allege how her PTSD substantially limited a major life activity, she does not allege a qualifying disability under the ADA or Rehabilitation Act. Her third and fourth counts are DISMISSED without prejudice, but the Court will permit plaintiff to file an amended complaint within 30 days that repleads her ADA and Rehabilitation Act claims to address the flaws identified above. *See Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 211–12 (D. Conn. 2012) (dismissing claim with leave to amend complaint where "plaintiff failed to allege that her transverse myelitis limit[ed] a major life activity and that

any impairment as a result of her transverse myelitis was not for a short period of time").[2]

### IV. FMLA Claim

Pineda's fourth and final claim is for violation of the Family and Medical Leave Act of 1993 ("FMLA") for employment discrimination on the basis of leave for qualified medical or family reasons. The Second Circuit recognizes two types of FMLA claims—"interference" claims and "retaliation" claims. *See Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam). Pineda's claim sounds in retaliation. (*See* ECF No. 2 at 8 ("I believe I was retaliated against and wrongly terminated based upon . . . [my] use of FMLA.").)

To state a claim for FMLA retaliation, plaintiff "must plausibly allege that [s]he exercised rights protected by the FMLA and that [s]he suffered an adverse employment action under circumstances giving rise to an inference of retaliatory intent." *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 365 (S.D.N.Y. 2016), *reconsideration denied*, No. 12-CV-1968, 2016 WL 4399325 (S.D.N.Y. Aug. 17, 2016). An adverse employment action in this context is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Id.* (citing *Millea v. Metro–N.R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011).)

Pineda clearly pleads that she exercised rights protected by the FMLA, namely, by taking

---

[2] Pineda's employment discrimination claim should also specify whether Pineda was otherwise qualified to perform the essential functions of her job as an associate producer, with or without reasonable accommodations, and what adverse employment actions she believes ESPN took against her because of her disability. In addition, her accommodations claim should specify whether she could perform the essential functions of her job with reasonable accommodations, what those accommodations are, and whether ESPN refused to make them.

FMLA leave in June 2015 following surgery. (ECF No. 2 at 9.)[3] Pineda's complaint sets forth three actions that might qualify as "adverse employment actions." First, Pineda alleges that her boss refused to give her an extension of a deadline due to her surgery. (ECF No. 2 at 9–10, 15, ¶ 11.) "[P]etty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims," and the lack of an extension of one of Pineda's work assignment does not rise to the level of an adverse employment action. *Millea*, 658 F.3d at 165 (internal quotation marks omitted). Second, Pineda alleges that she received a "Falling behind" performance evaluation in October 2015, in part because of her missed assignment. (ECF No. at 15, ¶ 12.) Third and finally, Pineda alleges that she was terminated on April 11, 2016 for failing to complete the PIP. (ECF No. 2 at 16, ¶ 19.) Both Pineda's performance evaluation and termination are sufficiently serious to rise to an "adverse employment action" on a retaliation claim. *Millea*, 658 F.3d at 165 (noting that a "formal reprimand issued by an employer is not a 'petty slight,' 'minor annoyance,' or 'trivial' punishment").

Nonetheless, Pineda does not allege that facts giving rise to an inference that the adverse employment action resulted from Pineda's decision to exercise her FMLA rights. Pineda's evaluation occurred 4 months after Pineda took FMLA leave, and her termination occurred almost 9 months after. *See Fernandez*, 159 F. Supp. 3d 351, 365 (S.D.N.Y. 2016) (holding that two-month gap between return to work and termination insufficient to raise inference of retaliatory intent where "Fernandez pleads no facts giving rise to retaliatory intent during that

---

[3] Pineda also alleges that she took maternity leave between October 2014 and February 2015, but does not allege that it was FMLA leave (as opposed to company leave) or that she intended to take *de facto* FMLA leave. *See McNamara v. Trinity Coll.*, No. 3:12CV363 JBA, 2013 WL 164221, at *4 (D. Conn. Jan. 15, 2013) (permitting FMLA retaliation claim where

10

two month period, during which time Fernandez was permitted to work as usual"). Pineda does not point to any other evidence of discriminatory intent under the FMLA. Rather, Pineda's own allegations suggest that both adverse actions occurred for non-discriminatory, performance-based reasons. Specifically, Pineda's CHRO affidavit states that she received a poor performance review in part because she failed to meet an assignment deadline after her boss refused an extension, not because she originally took FMLA leave for surgery, and further that she was terminated because she failed to complete the PIP. (ECF No. 2 at 15, ¶ 12, 16, ¶ 16.) Neither alleges "adverse employment action under circumstances giving rise to retaliatory intent" and thus her FMLA claim is DISMISSED without prejudice. Pineda may replead her FMLA claim in any amended complaint she files.

Accordingly, Pineda's Title VII sex discrimination, Rehabilitation Act, ADA, and FMLA claims are DISMISSED without prejudice. These claims will be dismissed with prejudice within 30 days unless Pineda files an amended complaint that rectifies the defects identified herein. Pineda's Title VII claim for discrimination based on religion is DISMISSED with prejudice.

Pineda's Title VII claim for discrimination based on race, color, and national origin and her Section 1981 claim may proceed. The Clerk shall verify the corporate addresses of the defendants, mail a waiver of service of process request packet containing the complaint to them at the confirmed addresses within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals service, and the defendants shall be required to pay the costs of such service in

---

plaintiff plausibly alleged that he took *de facto* FMLA leave).

accordance with Fed. R. Civ. P. 4(d). Defendants shall file their response to the complaint, either an answer or motion to dismiss, within thirty (30) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

      **SO ORDERED** this 23rd day of October 2018 at Hartford, Connecticut.

                                             /s/
                                     Michael P. Shea
                                     United States District Judge