UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL MARIE PINEDA<br><br>*Plaintiff*,<br><br>v.<br><br>ESPN, INC., THE WALT DISNEY COMPANY and HEARST COMMUNICATIONS INC.,<br><br>*Defendant*. | CIVIL ACTION NO. 3:18-cv-00325-MPS |

**RULING ON MOTION TO DISMISS**

Plaintiff, Rachel M. Pineda, brought this action against ESPN, Inc. ("ESPN"), The Walt Disney Company ("TWDC"), and Hearst Communications, Inc. ("Hearst"). (ECF No. 2.) I previously dismissed Plaintiff's claims of discrimination based on religion, sex, as well as claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Family and Medical Leave Act ("FMLA"), and Plaintiff has abandoned her claim under Title VII. (ECF No. 14, 38.) Plaintiff's remaining claim asserts a violation of 42 U.S.C. § 1981 for intentional employment discrimination on the basis of race. (ECF No. 2.) Defendants ESPN and The Walt Disney Company have moved to dismiss the complaint. (ECF No. 27.) The motion to dismiss is GRANTED, and I dismiss the complaint against Hearst *sua sponte*. Plaintiff's Section 1981 claim is dismissed without prejudice as to ESPN and with prejudice as to TWDC and Hearst.

I. **Allegations**

The factual allegations below are drawn from Plaintiff's Complaint and the Affidavit she filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), both of which Plaintiff filed *pro se*. (ECF No. 2, at 8.) Such allegations are accepted as true for the

1

purpose of adjudicating the present motion to dismiss. I will set forth only the facts relevant to the surviving claim.

Plaintiff Rachel Pineda is a woman of Hispanic ethnicity. (ECF No. 2 at 8, Pineda Aff. ¶ 1.) Plaintiff was originally employed by ESPN, which is allegedly owned by TWDC and Hearst, from March 2003 to 2008 and was subsequently rehired in January 2011 as an Associate Producer. (ECF No. 2 at 8, Pineda Aff. ¶ 4.) Plaintiff was terminated on April 11, 2016. (ECF No. 2 at 8, Pineda Aff. ¶ 4.) During Plaintiff's employment with Defendant, she worked in several different departments, including the International Department, "Deportes" Department, and the Domestic Features Department. (ECF No. 2 at 9, Pineda Aff. ¶ 5.)

On or around August 2013, Plaintiff was moved to the Domestic Features Department in a technical role as an Associate Producer. (ECF No. 2 at 9, Pineda Aff. ¶ 6.) In this position, Plaintiff was informed she would be with technology support and would have the opportunity to produce in the future. (ECF No. 2 at 9, Pineda Aff. ¶ 6.) Because of this information, Plaintiff expected to receive training on technical producing including scripting, taping, editing, and final execution; however, no training was provided. (ECF No. 2 at 9, Pineda Aff. ¶ 6.) After her maternity leave, Plaintiff was assigned feature-content work without any further training and her time in the technical support position was cut short. (ECF No. 2, Pineda Aff. ¶ 8.) Despite the promise of additional training, Plaintiff received none and continued her work in creating, developing, implementing, and completing feature assignments. (ECF No. 2, Pineda Aff. ¶ 8.)

Plaintiff was rated "falling behind" on a performance evaluation and was subsequently placed on a 90-day Performance Improvement Plan ("PIP") in November 2015. (ECF No. 2, Pineda Aff. ¶ 13–14.) Plaintiff was told she needed improvement in several areas of her work, including story creation. (ECF No. 2, Pineda Aff. ¶ 14–15.) She alleges that after she pitched a

2

number of stories involving the Hispanic community, she was told they were too "local." (ECF No. 2, Pineda Aff. ¶ 15.) Valerie Gordon, a Department manager, told Plaintiff to "go to Deportes" with her ideas. (ECF No. 2, Pineda Aff. ¶ 15.) Deportes is the Spanish-language network run by ESPN. Weeks into the PIP placement, Plaintiff's manager informed her that she would not pass PIP and that she "should probably just resign." (ECF No. 2, Pineda Aff. ¶ 16.) After two extensions of the PIP, Plaintiff was terminated. (ECF No. 2, Pineda Aff. § 18–19.) Plaintiff was then placed on a "no-hire" throughout TWDC, which owns ESPN, allegedly with Hearst. (ECF No. 2, Pineda Aff. ¶ 20.) Plaintiff was not aware of this classification until after she was approached about doing some contract work for other individuals at ESPN; she does not specify when this occurred. (ECF No 2, at 16 Pineda Aff. ¶ 20.) She was told that she can never work for Disney again in any capacity. (*Id*.) Plaintiff alleges that although she has been blacklisted from ever working for TWDC and the "wide range of industries" controlled by TWDC, others who had been previously banned from Disney are now working for TWDC again. (*Id*.)

Plaintiff also alleges the following: (1) ESPN strives to be inclusive and increase diversity; (2) the company continues to frame the experience of Latinos in America as an immigrant story, rather than including voices from third, fourth, or more generation American Hispanics; and (3) ESPN actively works to enforce hatred of immigrants and continuously illustrates the narrative of non-white Americans as being "others," while also not giving the same opportunities to Hispanics that are provided to white employees. (ECF No. 2, at 9.) Plaintiff also has had encounters with co-workers regarding race specific comments. Plaintiff was asked by one co-worker where her parents were from and what language her family spoke in the house growing up. (ECF No. 2, at 10.) Another time, the Plaintiff was asked if she worked in the

cafeteria. (*Id.*) Plaintiff's supervisor Denny Wolfe also allegedly mocked racial categories that are used to describe ethnic minorities in the United States, including a comment in which he identified himself as a "generic white male producer." (*Id.*) Plaintiff does not specify when any of these events occurred. Plaintiff also alleges that the "fraternal, secret society, cult-like culture at ESPN is hostile for women, people of color, new moms, women over 33 and rape survivors." (*Id.*) Such business practices allegedly continue to cause harm and inequity for women and people of color who are United States citizens. (*Id.*)

## II. Procedural History

On September 7, 2016, Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and CHRO. The EEOC released her claims and sent a Notice of Right to Sue on October 31, 2017. (ECF No. 2 at 6, 28.) Plaintiff commenced this action against ESPN and TWDC February 14, 2018. (ECF No 2 at 12.) Plaintiff originally filed her complaint in the United States Southern District of New York (ECF No. 2 at 1), but the case was transferred to this Court on February 16, 2018. (ECF No. 3.)

Plaintiff sued ESPN and ESPN's purported owners, TWDC and Hearst, alleging that her employer, ESPN, discriminated against her on the basis of multiple protected characteristics and retaliated against her for exercising her rights under the Family and Medical Leave Act. (ECF No. 14, IRO.) Plaintiff asserted causes of actions under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17; (2) 42 U.S.C. § 1981; (3) the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 to 796; (4) the ADA, 42 U.S.C. §§ 12101 to 12213; and (5) the FMLA, 29 U.S.C. §§ 2601 to 2654. (ECF No. 14, IRO.)

On October 23, 2018, after evaluating Plaintiff's complaint in an initial review order ("IRO"), I dismissed Plaintiff's Title VII sex discrimination, Rehabilitation Act, ADA, and

4

FMLA claims without prejudice and dismissed with prejudice Plaintiff's Title VII claim for discrimination based on religion. (ECF No. 14, at 11.) The remaining claims were a Title VII claim for discrimination based on race, color, and national origin and the Section 1981 claim. (*Id*.)

Among other things, Defendants ESPN and TWDC argued in their briefs supporting the motions to dismiss that Plaintiff failed to exhaust her administrative remedies against TWDC and failed to file the Title VII claims against either TWDC or ESPN within the statutory timelines. (ECF No. 27.) In her opposition brief, Plaintiff stated that she is abandoning her Title VII claim and is only pursuing her Section 1981 claim. (ECF No. 38.) Her Title VII claim is therefore dismissed with prejudice.

### III. Discussion

#### A. Legal Standard

#### 1. Fed. R. Civ. P. 12(b)(6) [1]

Under Rule 12(b)(6), the Court must determine whether the Plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court accepts the complaint's factual allegations as true, *id.*

---

[1] TWDC has also moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Because I conclude that Plaintiff has failed to plead a cognizable claim against TWDC, I need not address TWDC's personal jurisdiction challenge. *See Chevron Corp. v. Naranjo,* 667 F. 3d 232, 246, n. 17. (2d Cir. 2012) ("Ordinarily, we would address any challenge to personal jurisdiction prior to deciding the merits of the cause of action. However, in cases such as this one with multiple defendants–over some of whom the court indisputably has jurisdiction–in which all defendants collectively challenge the plaintiff's cause of action, we may address first the facial challenge to the underlying cause of action and, if we discuss the claim in its entirety, decline to address the personal jurisdiction claims made by some defendants.").

at 572, and "draw[s] all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 103, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Gonzales v. Eagle Leasing Col,* No. 3:13-CV-1565 JCH, 2014 U.S. Dist. LEXIS 134913, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[w]hen a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant['s] motion to dismiss." *Scott v. Town of Monroe,* 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 472 (2d Cir. 2006). To plead a cognizable legal claim, however, a *pro se* plaintiff must meet the standard of facial plausibility. *See Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009)).[2]

**2. 42 U.S.C. § 1981.**

Plaintiff's remaining claim is that the defendants unlawfully discharged her on the basis of her race and color in violation of 42 U.S.C. § 1981 ("Section 1981"). (*See* ECF No. 38, at 8.) The elements of a Section 1981 claim are: "(1) plaintiff's membership in a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) discrimination concerning the plaintiff's ability to make and enforce contracts, sue, be party to a suit, give evidence, or fully and equally enjoy the benefit of all laws and proceedings for the security of persons and

---

[2] Although the Plaintiff now has counsel, who has filed a brief in opposition to the motion to dismiss, the complaint was filed by the Plaintiff *pro se.*

6

property." *McNeill v. People of City and State of New York,* 242 Fed. App'x. 777, 2007 WL 2781910 (2d Cir. 2007) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir. 1993). Under Section 1981, the defendant's acts must be both purposefully discriminatory and racially motivated. *Riley v. ITT Federal Services Corp.,* 2001 WL 194067, at *2 (D. Conn. Feb. 22, 2001). Conclusory statements of discriminatory intent are not sufficient to survive a motion to dismiss. *Id.*

"Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981. . . . " *Patterson v. Cty. Of Oneida, N.Y.,* 375 F.3d 206, 224 (2d Cir. 2004). Unlike a Title VII claim, however, a § 1981 claim requires proof that the discrimination was intentional. *Id*. at 226.

### B. Plaintiff Fails to State a Claim Against TWDC or Hearst

Plaintiff satisfies the first and third elements of a Section 1981 claim, but fails to plead facts in support of the second element of intentional discrimination against TWDC. Plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Timmons v. City of Hartford,* 283 F. Supp. 2d 712, 717 (D. Conn. 2003). "A complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of Section 1981 fails to state a claim under Rule 12(b)(6)." *Id*.

Plaintiff's only allegation involving TWDC is her claim that she was placed on a no hire list at TWDC. (ECF No 2, at 11.) She does not allege any facts concerning who at TWDC did this, when it was done, or why it was done. Her complaint nowhere identifies any interaction between her and any agent of TWDC. Indeed, she apparently learned of her placement on

TWDC's "no hire list" when attempting to be hired to do contract work "on ESPN productions" (ECF No. 2, Pineda Aff. ¶20.) It is thus not even clear from her complaint that it was TWDC, as opposed to ESPN, that placed her on the TWDC no hire list. But even assuming it was TWDC that did so, there is no allegation that suggests the reason TWDC did so or when it did so. Even construing this *pro se* pleading liberally, *Harris v. Mills,* 572 F. 3d 66, 72 (2d Cir. 2009), and interpreting it to raise the "strongest arguments that [it] suggests," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 472 (2d Cir. 2006), I cannot determine that Plaintiff's placement on a no hire list by TWDC gives rise to a plausible inference of racial or ethnic discrimination. In addition, although an employer's preferential treatment of a similarly situated employee outside of a plaintiff's protected class can raise an inference of discrimination, *Butts v. N.Y. City Dep't of Education,* 2018 WL 4725263, at *10 (E.D.N.Y. Sept. 28, 2018), Plaintiff has not alleged that similarly situated employees received different treatment than she.[3] Plaintiff's bare allegation that "other people who had previously been banned from Disney are now working for them again" (ECF No. 2, at 11) is insufficient to raise a plausible inference of discriminatory animus. Plaintiff's allegation does not identify any such people, their race, or whether they were similarly situated.

Nor does TWDC's ownership of ESPN make it liable for ESPN's alleged discriminatory acts. *See United States v. Bestfoods,* 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation. . . is not liable for the acts of its subsidiaries."); *Guzman v. News Corp.,* 2013 WL 5807058 at *8 (S.D.N.Y. Oct. 28, 2013) (finding that a parent company is not ordinarily liable for the

---

[3] "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Butts v. N.Y. City Dep't of Education,* 2018 WL 472563, at *10 (E.D.N.Y. Sept. 28, 2018) (quoting *Ruiz v. County of Rockland,* 609 F.3d 486, 493 (2d Cir. 2010).

8

employment discrimination of its subsidiary unless requirements of single employer or joint employer doctrine are satisfied);[4] *see also Darden v. DaimlerChrysler North America Holding Corp.,* 191 F.Supp.2d 382, 397 (S.D.N.Y. Mar. 14, 2002) (holding that a parent corporation will not be held liable for the torts of its subsidiary unless the court has reason to pierce the corporate veil or to find that the tortious conduct was pursuant to an agency relationship). Plaintiff has made no allegations to suggest that the actions of ESPN employees described in the complaint are attributable to TWDC under principles of agency law. Therefore, Plaintiff's Section 1981 claim against TWDC is dismissed with prejudice.

Plaintiff's claims against Hearst, which has not appeared in this case and as to which Plaintiff has filed a motion for default (ECF No. 39), are even more threadbare. Plaintiff makes no specific allegations against Hearst whatsoever. Hearst is mentioned only twice in Plaintiff's complaint and affidavit: (1) "The Walt Disney Company and Hearst Communications, Inc. own ESPN" (ECF No. 2, at 8) and (2) "I believe that ESPN's, Disney's and Hearst's business practices have hurt and continue to cause harm and inequity for women and people of color who are United States citizens." (ECF No.2, at 11.) She does not allege that she was employed by Hearst, that she interacted with any employees or agents of Hearst, or that Hearst did anything to her. She does not allege that Hearst did or did not do anything at all. And, as noted above, a parent corporation is not liable for acts of employment discrimination by its subsidiary. Therefore, although Hearst has not appeared in this case, I dismiss the claims against Hearst with prejudice, because even a non-appearing defendant cannot be held liable on a complaint that fails

---

[4] Here, Plaintiff pleads no facts suggesting interrelation of operations, centralized control of labor operations, common management, or common ownership or financial control between ESPN and TWDC—factors that courts consider to determine whether two companies should be treated as a single employer. *See Guzman,* 2013 WL 5807058, at *8. Nor does she plead any facts suggesting that TWDC and ESPN were her joint employer; she does not allege that she "actually work[ed] for each of the two entities, even though she [was] an employee of only one." *Id.* at *12.

to plead a cause of action against it. I also deny the Plaintiff's motion for default (ECF No. 39) against Hearst.

### C. Plaintiff Fails to State a Claim Against ESPN.

Plaintiff's claim of discrimination by ESPN relies primarily on a single comment made by Department Manager, Valerie Gordon. Plaintiff alleges that Ms. Gordon told her to "go to Deportes" with her ideas. (*See* ECF No. 2, at 16.) Deportes is ESPN's Spanish-language network. (*Id.*) (ECF No. 2, at 16.) The Second Circuit "generally looks to four factors to determine whether a remark made in the workplace is probative of discriminatory motive: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Shaw v. McDonald,* 715 F. App'x 60, 61 (2d Cir. 2018).

Plaintiff alleges that Ms. Gordon told her to "go to Deportes" with her story ideas involving the Hispanic community. (ECF No. 2, 15–16, ¶ 15.) As a Department Manager, Ms. Gordon had a supervisory role. However, plaintiff fails to plead facts sufficient to suggest that Ms. Gordon played any role in the decision to terminate her from ESPN.

Plaintiff has also not pled specifically when Ms. Gordon made this remark—the second factor of the *Shaw* test. Plaintiff was placed on a Performance Improvement Plan ("PIP") in November 2015 (ECF No 2, at 15 ¶ 14) and terminated in April 2016. (ECF No. 2, at 16 ¶ 19.) Because I must construe Plaintiff's allegations liberally, I will assume the remark was made some time between her placement on the PIP in November 2015 and her termination in April 2016. But the Plaintiff alleges no facts suggesting that the remark was connected to her

termination. And with regard to the fourth *Shaw* factor, there is little to link the remark to the decision-making process. True, the remark was made some time during the six-month period the PIP was in effect, and Plaintiff does allege she was ultimately terminated for not successfully completing the PIP. But as noted, Plaintiff does not allege whether Ms. Gordon was involved in her termination or whether being referred to Deportes had anything to do with her failure to complete the PIP.

The third factor of the *Shaw* test weighs in the plaintiff's favor, although it is a close call. When all reasonable inferences are construed in favor of the Plaintiff, one could view Ms. Gordon's remark as discriminatory. Plaintiff is of Hispanic ethnicity (ECF No. 2, at 8 ¶ 1) and alleges that many of her story ideas related to the Hispanic community. (ECF No. 2, at 9 ¶ 15.) If the remark was made in response to Plaintiff's proposal about such a story, it is possible to view the remark as reflecting animus towards Plaintiff based on her Hispanic ethnicity. Of course, it is also possible to view the remark as reflecting merely a view that a different department within ESPN, one focused on Spanish-language programming, would be a more suitable platform for a particular story idea. But at this stage, I must construe all such ambiguities in Pineda's favor, and so I view the remark as discriminatory

Plaintiff's remaining allegations are conclusory. Plaintiff alleges that "[o]ther comments on [her] ethnicity were made by other employees of [ESPN]." (ECF No. 2, at 16 ¶ 15.) Plaintiff also states that "[ESPN] continues to frame the experience of Latinos in America as an immigrant story, rather than including voices from the 3rd, 4th or more generation American Hispanics." (ECF No. 2, at 9.) Plaintiff also states that "Hispanic employees are not given the same opportunities to advance at the rate white employees are." (*Id.*) These conclusory statements are insufficient to survive a motion to dismiss and, because they are so vague and

devoid of any apparent connection to Plaintiff or her termination, they add nothing to Plaintiff's few specific factual allegations. *See Andrews v. Fremantlemendia, N.A., Inc.,* 613 Fed. Appx. 67, 69 (2d Cir. 2015) (noting that a plaintiff's 'naked allegation' of racial discrimination on the part of the defendant is too conclusory to survive a motion to dismiss) (citations omitted).

Ultimately, I find that the plaintiff has failed to plead enough facts to make it plausible that discrimination on the basis of her Hispanic ethnicity was a motivating factor in her termination. Nonetheless, it is a close call, and Plaintiff may be able to plead, consistent with Rule 11, more facts about the content of Ms. Gordon's remark and any connection to her firing to nudge the claim across the plausibility line. Therefore, I dismiss her claim against ESPN without prejudice.

## IV. Conclusion

For the reasons set forth above, the motion to dismiss (ECF No. 27) is GRANTED and the motion for default (ECF No. 39) is DENIED. Within 21 days of this order, Plaintiff may file an amended complaint addressing the defects identified in this ruling. Failure to do so will result in the Court's dismissing her claim against ESPN with prejudice. The Court is unlikely to extend this deadline.

IT IS SO ORDERED.

                                                     /s/
                                Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                November 22, 2019